REQUESTED BY:John Munn, Director
Department of Banking and Finance
This is in response to your request for an opinion of the Attorney General concerning preemption of state law by a federal regulation. You have asked two questions relating to whether the regulatory authority given to the National Credit Union Administration (NCUA) under the Federal Credit Union Act, 12 U.S.C. §§ 1752-1792, preempts application of state law prohibiting use of the word bank, or its derivation, by a federal or state-charted credit union. The NCUA is the federal agency that charters state and federal credit unions and insures savings in federal and most state-chartered credit unions. 12 U.S.C. §§ 1752(a) and1783.
BACKGROUND
Neb. Rev. Stat. § 8-113 (Cum. Supp. 2006) precludes the use of the world bank, except for certain classes of banking institutions and other organizations described in the statute. In relevant part, § 8-113
states:
No individual, firm, company, corporation, or association doing business in the State of Nebraska, unless organized as a bank under the Nebraska Banking Act or the authority of the federal government, or as a building and loan association, or a savings bank under Chapter 8, article 3, or the authority of the federal government, shall use the work bank or any derivative thereof as any part of a title or description of any business authority. . . .
(Emphasis added).
Other categories of financial institutions are exempt from application of the prohibition of use of the word bank or derivative thereof. Federal credit unions chartered by the NCUA and state-chartered credit unions are not included with an exempt category described in § 8-113. A violation of the statute constitutes a Class V misdemeanor.
In its supervisory capacity, the Department of Banking and Finance has required that credit unions cease using the word banking in describing their services based on the prohibition of § 8-113. Reportedly, the Nebraska Legislature has not enacted a legislative resolution to allow use of word bank or its derivation by credit unions as recently as the 2006 session. The questions posed are in part due to a Legal Opinion letter of the NCUA Op. 03-0146 (March 12, 2004) which in part, concluded that a Minnesota statute with similar prohibition of the use of the word bank by credit unions is preempted by the NCUA's advertising regulation applicable to insured credit unions.
ANALYSIS
The FIRST question is stated as follows:
1. IS SECTION 8-113 PREEMPTED BY FEDERAL LAW WITH RESPECT TO ITS APPLICATION TO FEDERAL CREDIT UNIONS DOING BUSINESS IN NEBRASKA, SO THAT THOSE CREDIT UNIONS CAN USE THE WORD "BANK" OR ANY DERIVATIVE THEREOF AS DESCRIPTIVE OF ANY BUSINESS ACTIVITY?
In considering whether federal regulations have a preemptive effect on state laws, we are guided by several well-established principles. State law may be preempted by federal statutes in three ways under United States Constitution Article VI, c. 2, referred to as the "Supremacy Clause." State law may be preempted if federal law expressly states Congress' intention to preempt state law on a given subject. Capital Cities, Inc. v. Crisp, 467 U.S. 691, 104 S. Ct. 2694, 81 L. Ed. 2d 580
(1984). If Congress adopts comprehensive laws so pervasive that it "occupies the field," state laws in the field so occupied will fall. Silkwood v. Kerr-McGee Corporation, 464 U.S. 238, 104 S. Ct. 615,78 L. Ed. 2d 443 (1984). Finally, if federal and state law directly conflict so that a party cannot comply with both, the federal law will control over the contrary state law. Further, federal regulations have no less preemptive effect than federal statutes. Fidelity Federal Savings and Loan Association v. De La Cuesta, 458 U.S. 141, 102 S. Ct. 3014,73 L. Ed. 2d 664 (1982).
At first glance, we do not perceive any conflict between § 8-113 and the NCUA regulation relating to advertising by an insured credit union. The NCUA regulation states:
No insured credit union may use any advertising (which includes print, electronic, or broadcast media displays and signs, stationery, and other promotional material) or make any representation which is inaccurate or deceptive in any particular, or which in any way misrepresents its services, contracts, or financial condition, or which violates the requirements of § 707.8 of this subchapter, if applicable. This provision does not prohibit an insured union from using a trade name or a name other than its official charter name in advertising or signage so long as it uses its official charter name in communications with NCUA and for share certificates or certificates of deposit, signature cards, loan arrangements, account statements, checks, drafts, and other legal documents.
12 C.F.R. § 740.2 (2007).
A decision of the U.S. Court of Appeals for the Tenth Circuit, however, mandates a conclusion that there is a conflict between § 8-113
and the NCUA regulation. In Federal Home Loan Bank v. Empie,778 F.2d 1447 (10th Cir. 1985), the Federal Home Loan Bank Board brought an action against the State Banking Department and the Attorney General to prevent the State from enforcing its ban on savings and loan institutions using the term bank in advertisements. The State's position was that a conflict did not exist between state law and the federal regulation. The Circuit Court found that there was a conflict and held as follows:
We therefore read this Oklahoma statute as expressly forbidding something that the federal regulations expressly permit; federally chartered savings institutions' use in advertising, in at least some instances, of several forms of the word "bank."
778 F.2d at 1454.
The NCUA has also issued its letter opinion addressing the issue of whether its regulations preempt application of state law relating to use of the word bank by a federal credit union. The NCUA has concluded that its advertising regulation occupies the field and "preempts any state statute that attempts to limit an FCU's authority to advertise." FCUA Op. 03-014 at 2. The rationale stated is, "[o]ur view is that failure by an FCU to comply with the statute does not constitute a misleading or deceptive advertisement warranting enforcement action by the NCUA." Id. at 3. Significantly, the U.S. Supreme Court has observed, "It is settled that courts should give great weight to any reasonable construction of a regulatory statute adopted by the agency charged with enforcement of that statute." Clarke v. Securities Industry Association, Security Pacific National Bank, 479 U.S. 388, 404, 107 S. Ct. 750, 759,93 L. Ed. 2d 757, 764 (1987).
In view of these authorities, it is our opinion that the NCUA regulation, 12 C.F.R. § 740.2 (2007), preempts application of § 8-113.
The SECOND question is stated:
2. IF SECTION 8-113 IS PREEMPTED BY FEDERAL LAW WITH RESPECT TO ITS APPLICATION TO FEDERAL CREDIT UNIONS DOING BUSINESS IN NEBRASKA, ARE STATE-CHARTERED CREDIT UNIONS, BY VIRTUE OF SECTION 21-17,117, ABLE TO USE THE WORD "BANK" OR ANY DERIVATIVE THEREOF AS DESCRIPTIVE OF ANY BUSINESS ACTIVITY, NOTWITHSTANDING THE PROVISIONS OF SECTION 8-113?
It is our conclusion that 8-113 may not be applied to state-chartered credit unions for essentially two reasons.
FIRST, we believe that the NCUA advertising regulation also preempts state law with respect to insured state-chartered credit unions. The regulation makes no distinction in its application between federal and state-chartered credit unions. Rather, the term used in the regulation is "any insured credit union." For this reason, a state-chartered credit union that is insured by the NCUA falls within the scope of the regulation and § 8-113 is preempted from application to an insured credit union, whether or not chartered by the federal government or the State.
SECOND, the express provisions of Neb. Rev. Stat. § 21-17,115 (Cum. Supp. 2006) extend the same rights, powers, privileges, and immunities of federal credit unions to state-chartered credit unions. Since we have concluded that § 8-113 is preempted from application to any insured credit union, uninsured credit unions, if any, would have the same privileges and immunities of insured credit unions due to the provisions of § 21 17,115.
Sincerely,
JON BRUNING
Attorney General
Fredrick F. Neid
Assistant Attorney General